UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELL SEMICONDUCTOR, INC.,<br><br>                       Plaintiff,<br><br>   v.<br><br>NXP USA, INC.,<br><br>                       Defendant. | Case No. 22-cv-0594-BAS-KSC<br>Case No. 22-cv-1267-BAS-KSC<br>Case No. 22-cv-1527-BAS-KSC<br>Case No. 22-cv-1794-BAS-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S UNOPPOSED MOTION FOR A MANDATORY STAY OF PLAINTIFF'S '803 INFRINGEMENT CLAIM; and**<br><br>**(2) DENYING DEFENDANT'S MOTION FOR A STAY OF ALL PROCEEDINGS** |

     Plaintiff Bell Semiconductor, Inc. ("Bell") owns a portfolio of patents that relate to semiconductor-design technologies, including the Asserted Patents in the above-captioned matters: U.S. Patent Nos. 7,007,259 (the "'259 Patent"), 6,436,807 (the "'807 Patent"), 7,149,989 (the "'989 Patent"), 7,260,803 (the "'803 Patent"), 7,231,626 (the "'626 Patent"), and 7,396,760 (the "'760 Patent") (defined previously as, "Asserted Patents").

Bell commenced four suits against Defendant NXP USA, Inc. ("NXP") alleging infringement of the Asserted Patents: 22-cv-0594 (alleging infringement of the '259 and '807 Patents), 22-cv-1267 (alleging infringement of the '803 and '989 Patents), 22-cv-1527 (alleging infringement of the '626 Patent), and 22-cv-01794 (alleging infringement of the '760 Patent).

Specifically, Bell alleges the Asserted Patents "are used by NXP in the production of its" semiconductor device, the NXP LS1043A Quad-Core Networking Processor device ("Accused Product"). (*See, e.g.,* Am. Compl. ¶ 1, 22-cv-0594, ECF No. 69-1.) Bell claims NXP "employs a variety of design tools, for example, Cadence, Synopsys, and/or Siemens [("Suppliers")] tools," to manufacture the Accused Product, "as recited in the [Asserted Patents]." (*See, e.g., id.* ¶¶ 46–48, 60–63.)

The Court held in abeyance Bell's case against NXP alleging infringement of the '626 Patent pursuant to the mandatory stay provision of 28 U.S.C. § 1659, pending final resolution of parallel U.S. International Trade Commission ("ITC") proceeding. *See Electronic Devices, Semiconductor Devices, and Components Thereof, Inv.* No. 337-TA-1340 (the "ITC Proceeding"). Still, Bell's three other cases remain active.

Now before the Court is (1) NXP's unopposed motion seeking a partial mandatory stay under 28 U.S.C. § 1659 of Case No. 22-cv-1267 as to Bell's infringement claims relating to the '803 Patent only (not the '989 Patent) (Case No. 22-cv-1267, ECF No. 26 ("Unopposed § 1659 Mot.")), and (2) NXP's motion for a discretionary stay of Bell's infringement claims with respect to the subset of Asserted Patents that are not at issue in the ITC Proceeding (Case No. 22-cv-0594, ECF No. 74 ("NXP's Stay Mot.")).[1] For the sake of easy identification, the Court refers to the '626 and the '803 Patents as the "ITC Patents" and the remaining Asserted Patents as the "non-ITC Patents." Bell opposes NXP's Stay Motion. (Case No. 22-cv-0594, ECF No. 78 ("Opp'n").)

---

[1] NXP's Stay Motion also contains a motion to consolidate. Because the Court ordered a hearing on the issue of consolidation and will address that issue in a subsequent, forthcoming order, the Court **TERMINATES AS MOOT** that component of NXP's application.

On January 5, 2023, this Court heard oral argument on whether Bell's cases against NXP—as well as Bell's three other related cases against Defendant Maxlinear Inc.—should be consolidated and, if so, how and for what purpose. At the hearing, NXP and Bell also addressed their respective positions concerning the Stay Motion and proffered argument in support thereof.

Based on the briefs submitted and oral argument proffered, the Court **GRANTS** the Unopposed § 1659 Motion and **DENIES** NXP's Stay Motion for the reasons set forth below.

I.   **Motion to Stay Under 28 U.S.C. § 1659**

Under 28 U.S.C. § 1659, "at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission." The purpose of this mandatory stay "is to prevent separate proceedings on the same issues occurring at the same time" and to avoid duplicative and inefficient consumption of the court and parties' resources. *In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007); *see also Polmyer Tech. Sys., Inc. v. ACON Lab'ys, Inc.*, No. 18-CV-0805-H-HLB, 2018 WL 3388123, at *2 (S.D. Cal. July 11, 2018) (applying stay provision).

NXP seeks a mandatory partial stay of Bell's claim asserting infringement of the '803 Patent on the ground an identical claim is also lodged in the ITC Proceeding. (Unopposed § 1659 Mot.) Bell does not oppose. The Court finds § 1659 applies here. Hence, the Court **GRANTS** the Unopposed § 1659 Motion (ECF No. 26) and **STAYS** Bell's claims in this action relating to the '803 patent, pending final decision in the ITC Proceeding.

II.   **Motion to Stay Non-ITC Infringement Claims**

NXP asks this Court to exercise its discretion to stay Bell's claims alleging infringement of the non-ITC Patents for the sake of judicial efficiency and in the interest of avoiding the parties' duplication of work, even though the mandatory stay provision of

§ 1659 does not apply to those Patents. Were this request granted, each of Bell's four lawsuits against NXP would be stayed entirely. NXP avers adjudication of the non-ITC Patents should be delayed until the ITC reaches a final decision in its Proceeding and/or until adjudication of the Suppliers' actions filed against Bell in the District of Delaware, which seek declarations that the Suppliers' software design tools do not infringe any of the Asserted Patents and that the Asserted Patents are invalid (Synopsis and Cadence Lawsuit, Ex. E to Mangini Decl., ECF No. 74-2; Siemens Lawsuit, Ex. G to Mangini Decl.).[2]

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This power to stay proceedings includes the discretion to grant stays "pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *I.K. ex rel. E.K. v. Sylvan Union Sch. Dist.*, 681 F. Supp. 2d 1179, 1190 (E.D. Cal. 2010).

The question whether to stay a case "calls for an exercise of a sound discretion" and a balancing of "competing interests." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Those interests include: (1) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay"; (2) "the possible damages which may result from the granting of a stay"; and (3) "the hardship or inequity which a party may suffer in being required to go forward[.]" *Id.*; *accord Pathway Innovations & Techs., Inc. v. Adesso, Inc.*, No. 15-cv-1538 JLS (JLB), 2016 WL 4595532, at *1 (S.D. Cal. Apr. 5, 2016) (opining *Hall* factors are pertinent to request to stay patent-infringement actions in light of related parallel

---

[2] All exhibits to the Mangini Declaration are annexed at ECF No. 74-2.

proceedings). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

### A. Simplifying or Complicating Issues

"Among the competing interests identified in *CMAX*, this [C]ourt must determine whether granting a stay will simplify or complicate issues, proof, or questions of law, while keeping in mind its goal of promoting economy of time for itself, for counsel, and for the litigants." *Cohen v. Carreon*, 94 F. Supp. 2d 1112, 1115 (D. Or. Apr. 24, 2000) (citing *CMAX*, 300 F.2d at 268). NXP avers this interest will be best served if the Court holds in abeyance all of Bell's actions pending resolution of (1) the ITC Proceeding and/or (2) the Suppliers' declaratory judgment actions in the District of Delaware. Doing so, NXP argues, will "narrow or even eliminate the issues that will have to be considered" by this Court in the matters involving the non-ITC Patents, "or (2) at a minimum, provide meaningful guidance." (Stay Mot. at 14.) This Court disagrees.

As an initial matter, the ITC Proceeding have no preclusive effect upon Bell's actions before this Court. *See, e.g.*, *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996) ("ITC decisions are not binding on district courts in subsequent cases brought before them"). Therefore, the notion the ITC's decision in *Electronic Devices, Semiconductor Devices, and Components Thereof, Inv.* No. 337-TA-1340 will prune overlapping issues is entirely speculative and subject to the parties agreeing not to dispute afresh any of the ITC's findings, which they are entitled to do as a matter of law.

Even the extent to which the ITC Proceeding will "provide . . . guidance" respecting Bell's claims NXP infringed the non-ITC Patents is conjectural. NXP essentially avers the ITC's decision will be insightful because the same Accused Product is at issue. But the Asserted Patents do not stem from the same patent families and have different histories and specifications. Hence, a final decision in the ITC Proceeding concerning the eligibility of the ITC Patents is unlikely to provide any meaningful guidance or clarity as to the relevant issues pertaining to the non-ITC Patents, which are not at issue in the ITC

Proceeding. *See, e.g.*, *Energetiq Tech., Inc. v. ASML Netherlands B.V.*, No. 1:15-CV-10240-DJC, 2016 WL 11727302, at *1 (D. Mass. Apr. 1, 2016) ("Waiting for the Commission proceeding to end, which does not involve identical parties or patents, is unlikely to simplify the case here substantially."); *Align Tech., Inc. v. 3Shape A/S*, No. CV 17-1646-LPS-CJB, 2018 WL 4292675, at *2 (D. Del. Sept. 7, 2018) ("Overlapping subject matter without more—such as overlapping specifications, prosecution history, or a familial relationship—does not provide much support for a stay."); *Humanscale Corp. v. CompX Int'l Inc.*, No. CIV.A. 3:09CV0086, 2009 WL 1444312, at *3 (E.D. Va. May 21, 2009) (similar).

For example, claim construction findings in the ITC Proceeding will likely not bear upon claim construction of the non-ITC Patents because the Asserted Patents do not stem from the same family. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1312 (Fed. Cir. 2014) ("[S]tatements made in unrelated applications are not relevant to claim construction."), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc); *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("First and foremost, the analytical focus of claim construction must begin, and remain centered, on the language of the claims themselves." (citing *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1201–02 (Fed. Cir. 2002)).  Nor is the ITC's determination with respect to infringement and invalidity issues concerning the ITC Patents likely to inform this Court's analysis of the infringement claims relating to the non-ITC Patents. *See Wirtgen Am., Inc. v. Caterpillar Inc.*, No. CV 17-770 RGA, 2021 WL 7209780, at *2 (D. Del. May 27, 2021) ("A stay is simply postponing the inevitable. Neither the issues nor discovery in this action will be simplified by issuing a stay relating to the claims involving the eleven patents that are not now at issue in the ITC.  Besides encompassing similar subject matter and having a shared presence in the accused infringing products, the issues involving the '641 Patent are largely independent since that patent is in a different family from all the other patents-in-suit." (footnote omitted)).

The Court is also skeptical holding in abeyance all of Bell's actions against NXP until adjudication of the Suppliers' declaratory judgment suits will advance judicial economy and/or avoid duplication of work. NXP argues the "customer-suit exception" warrants such a stay, but it is not clear that exception applies to the Suppliers' suits. Under that doctrine, "[w]hen a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take[s] precedence." *Upaid Sys., Ltd. v. Clean Dan.*, No. 18-0619, 2018 WL 5279567, at *2 (C.D. Cal. July 25, 2018) (quoting *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014)). The exception is aimed at protecting customers from the burdens of trial, "for it is the manufacturer who is generally the 'true defendant' in the dispute,' while the customer is simply a downstream retailer or end user of the allegedly infringing product." *Id.* But, here, the Suppliers are not the alleged manufacturers of "infringing goods," nor does Bell allege NXP is the mere "downstream retailer or end user" of an infringing product. Rather, Bell alleges NXP is the infringing manufacturer because it uses a method claimed by the Asserted Patents by employing the Suppliers' tools to create its Accused Product. (Am. Compl. ¶ 1 (listing NXP's "semiconductor chips, including at least the NXP LS1043A Quad-Core Networking Processor devices" as the accused product), 22-cv-594.) None of the precedents to which NXP cites support application of the customer-suit exception under such circumstances. (*See* Stay Mot. at 15–17 (collecting authorities).)

Accordingly, the Court finds NXP has failed to satisfy its burden of proving a stay ultimately would simplify this Court's resolution of Bell's claims NXP infringed upon the non-ITC Patents.

**B.   Possible Damage**

NXP avers Bell will not be "meaningfully harmed by a stay." (Stay Mot. at 11.) But this argument ignores Bell's cognizable "interest in bringing [its] case[s] to trial." *See Clinton*, 529 U.S. at 708; Order, dated Dec. 17, 2021, *Rideshare Displays, Inc. v. Lyft.*, No. 20-cv-1629-RGA-JLH (D. Del.), ECF No. 83 ("[D]elay inherently harms a non-moving

party by prolonging resolution of the dispute, even if the party is not currently a direct competitor." (footnote omitted)). That interest indisputably will be prejudiced by the delay attendant of a stay, particularly where, as here, the proposed stay does not serve to meaningfully simplify any issues, proof, or questions of law. As Bell demonstrates using ITC's own recently published data, it may take *years* for the parties to reach a final resolution of the ITC Proceeding. (Opp'n at 9–10); *Section 337 Statistics: Average Length of Investigations*, U.S. Int'l Trade Comm'n (Oct. 20, 2022) (showing that from 2020 until present, the average length of an ITC investigation is approximately 13.5 months, and that the longest duration for resolution lasted over two years).[3] And, if the losing party in the ITC Proceeding chooses to appeal to the Federal Circuit the ITC's final decision pursuant to 28 U.S.C. § 1295(a)(5), Bell will have to wait additional time—potentially tacking on years to the duration of the ITC Proceeding—to pursue its infringement claims as to the four non-ITC Patents. Simply put, a stay pending resolution of Bell's claims before the ITC will likely last a considerable duration and, thus, preclude Bell from expeditiously vindicating its rights under four of the six the Asserted Patents. *Cf. Energetiq*, 2016 WL 11727302, at *1 (finding defendants would face prejudice from a stay pending resolution of an ITC proceeding where "only two of the six patents at issue" were at issue in ITC proceeding).

    Nor has NXP shown waiting for resolution of the Suppliers' suits will inflict any lesser harm upon Bell's interest in bringing to trial its infringement claims that are not subject to the § 1659 stays. Those suits are still in their relative infancy: Synopsis and Cadence only filed their action in November 2022, *see* Compl. dated Nov. 18, 2022, *Synopsis, Inc., et al. v. Bell Semiconductor LLC*, 1:22-cv-1512-CFC (D. Del.), ECF No. 1, and Siemens in December 2022, Compl., dated Dec. 2, 2022, *Siemens Industry Software v. Bell Semiconductor, LLC*, 1:22-cv-1569-CFC (D. Del.), ECF No. 1.

---

[3]*Available at* https://www.usitc.gov/intellectual_property/337_statistics_average_length_investigations.htm (last accessed Jan. 6, 2023).

Accordingly, NXP has failed to show Bell will be spared from prejudicial delay if a global stay in the above-captioned matters is issued.

### C. Hardship from Moving Forward

NXP argues it will be prejudiced if the cases in which the non-ITC Patents are at issue move forward because "NXP will have to litigate very similar cases simultaneously in the ITC and district court." (Stay Mot. at 13.) But the patent-infringement claims relating to the non-ITC Patents are not at issue in the ITC Proceeding. Thus, the ITC Proceeding cannot resolve any issue with respect to NXP's alleged infringement of the non-ITC Patents. *See Wirtgen Am.*, 2021 WL 7209780, at *2 (explaining "[a] stay[pending ITC proceeding] is simply postponing the inevitable).

NXP also argues it would be unfair to proceed when the Suppliers are seeking preliminary injunctions enjoining Bell from pursuing claims of infringement relating to the Asserted Patents, including the above-captioned actions, in their declaratory judgment actions in the District of Delaware. (Stay Mot. at 17 (citing Prelim. Inj. Mot., filed Nov. 28, *Synopsys, Inc., et al., v. Bell Semiconductor LLC*, 1:22-cv-1512-CFC (D. Del.), Ex. G to Mangini Decl.).) But Bell appears to raise a colorable jurisdictional challenge that may stop the Suppliers' suits dead in their tracks. (*See* Opp'n at 15 (noting the Suppliers do not expressly allege in their pleadings they are required to indemnify NXP, which is required for Article III standing and subject matter jurisdiction)). Hence, there exists a tenable possibility issuing a stay pending resolution of the Suppliers' suits will be for naught.

Accordingly, NXP has not shown sufficient hardship to justify a global stay.

### III. CONCLUSION

For the reasons delineated above:

(1) The Court **GRANTS** NXP's Unopposed § 1659 Motion and **PARTIALLY STAYS** *Bell Semiconductor Inc. v. NXP USA, Inc.*, 22-cv-1267-BAS-KSC to the extent it asserts a claim NXP infringed upon the '803 Patent. (*See* 22-cv-1267, ECF No. 26.) The Court further **ORDERS** the parties to file a joint status report **by no later than March 3, 2023**, to file a joint status report every six months thereafter until the ITC Proceeding has

concluded, and to file a joint status report within ten (10) days after the ITC issues a final decision.

      (2)    The Court **DENIES** NXP's Motion to Stay Bell's infringement claims as to the non-ITC Patents.

**IT IS SO ORDERED.**

DATED: January 11, 2023

Hon. Cynthia Bashant
United States District Judge