UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELL SEMICONDUCTOR, LLC,<br><br>                                        Plaintiff,<br><br>v.<br><br>NXP USA, INC.,<br><br>                                        Defendant. | Case No.: 22-cv-01794-H-KSC<br>Consolidated for Pretrial Purposes with<br>Lead Case No.: 22-cv-00594-H-KSC<br><br>**ORDER DENYING DEFENDANT NXP'S RULE 12(b)(6) MOTION TO DISMISS**<br><br>[Doc. No. 15.][1] |

On December 29, 2022, Defendant NXP USA, Inc. ("NXP") filed a motion to dismiss Plaintiff Bell Semiconductor, LLC ("Bell Semic")'s complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 15.) On January 13, 2023, Bell Semic filed a response in opposition to NXP's motion to dismiss. (Case No. 22-cv-594, Doc. No. 93.) On January 23, 2023, NXP filed a reply. (Case No. 22-cv-594, Doc. No. 99.) On January 25, 2023, the Court took the matter under submission. (Doc. No. 24.) For the reasons below, the Court denies NXP's motion to dismiss.

/ / /

---

[1] All citations in this order are to the docket in <u>Bell Semiconductor, LLC v. NXP USA, Inc.</u>, No. 22-cv-01794-H-KSC, unless otherwise noted.

**Background**

Bell Semic alleges that it is the owner by assignment of U.S. Patent No. 7,396,760 ("the '760 Patent"). (Doc. No. 1, Compl. ¶ 24.) In the present action, Bell Semic alleges that NXP directly infringes, either literally or under the doctrine of equivalents, the '760 Patent by using the circuit design methodologies claimed in the patent to design one or more semiconductor devices, including for example its NXP LS1043A Quad-Core Networking Processor devices. (Id. ¶¶ 1, 38-43.)

The '760 Patent generally relates to features of semiconductor design and manufacturing. The '760 Patent is entitled "method and system for reducing inter-layer capacitance in integrated circuits" and was issued on July 8, 2008. U.S. Patent No. 7,396,760, at [45], [54] (issued Jul. 8, 2008). The invention disclosed in the '760 Patent "provides a method and system for reducing inter-layer capacitance utilizing an intelligent dummy filling placement in integrated circuits." Id. col. 2 ll. 17-19.

Independent claim 1 of the '760 Patent claims:

A method for placing dummy fill patterns in an integrated circuit fabrication process, comprising:

> obtaining layout information of the integrated circuit, the integrated circuit including a plurality of layers;
>
> obtaining a first dummy fill space for a first layer based on the layout information;
>
> obtaining a second dummy fill space for a second layer, the second layer being placed successively to the first layer;
>
> determining an overlap between the first dummy fill space and the second dummy fill space; and
>
> minimizing the overlap by re-arranging a plurality of first dummy fill features and a plurality of second dummy fill features,
>
> wherein the first dummy fill space includes non-signal carrying lines on the first layer and the second dummy fill space includes non-signal carrying lines on the second layer.

Id. col. 6 ll. 8-24.

On November 15, 2022, Bell Semic filed a complaint against NXP, alleging a claim for infringement of the '760 Patent. (Doc. No. 1, Compl. ¶¶ 34-46.) On January 12, 2023, the Court denied NXP's motion to stay this action. (Doc. No. 20 at 10.) On January 12, 2023, the Court consolidated this action with Bell Semiconductor v. NXP USA, Inc., No. 22-cv-594 (S.D. Cal, filed Apr. 27, 2022), and several other related actions for pretrial purposes. (Doc. No. 21 at 5.) By the present motion, NXP moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Bell Semic's complaint for failure to state a claim. (Doc. No. 15-1 at 1.)

## Discussion

### I. Legal Standards for a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."

Id. at 679. Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal conclusions" as true. Iqbal, 556 U.S. at 678. Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

**II.   Analysis of Plaintiff's Claim for Infringement of the '760 Patent**

In the complaint, Bell Semic alleges against NXP a claim for infringement of the '760 Patent. (Doc. No. 1, Compl. ¶¶ 34-46.) NXP argues that Bell Semic's claim for infringement of the '760 Patent should be dismissed for two reasons. First, NXP argues that the claim should be dismissed because the asserted claims of '760 Patent are invalid under 35 U.S.C. § 101. (Doc. No. 15-1 at 3-16.) Second, NXP argues that the claim should be dismissed because Bell Semic has failed to allege sufficient facts to state a plausible claim for infringement of the '760 Patent. (Id. at 16-20.) The Court addresses these two grounds for dismissal in turn below.

/ / /

A. NXP's § 101 Challenge to the Validity of the '760 Patent

　　i. Legal Standards Governing Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "'long held that this provision contains an important implicit exception[:] Laws of nature, natural phenomena, and abstract ideas are not patentable.'" Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 569 U.S. 576, 589 (2013) (quoting Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc., 566 U.S. 66, 70 (2012)). "This exception reflects the concern that patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." PersonalWeb Techs. LLC v. Google LLC, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (internal quotation marks omitted) (quoting Alice Corp. v. CLS Bank Int'l, 573 U.S. 208, 216 (2014)); see also CareDx, Inc. v. Natera, Inc., 40 F.4th 1371, 1376 (Fed. Cir. 2022) ("These exceptions exist because monopolizing the basic tools of scientific work 'might tend to impede innovation more than it would tend to promote it.'" (quoting Mayo, 566 U.S. at 71)).

"The Supreme Court has established a two-step framework for evaluating patent eligibility under § 101." Int'l Bus. Machines Corp. v. Zillow Grp., Inc., 50 F.4th 1371, 1377 (Fed. Cir. 2022) (citing Alice, 573 U.S. at 217). Under step one, the court "determine[s] whether the claim is 'directed to' a 'patent-ineligible concept,' such as an abstract idea." Coop. Ent., Inc. v. Kollective Tech., Inc., 50 F.4th 127, 130 (Fed. Cir. 2022) (quoting Alice, 573 U.S. at 217). If so, the court proceeds to step two and "examine[s] 'the elements of the claim to determine whether it contains an "inventive concept" sufficient to "transform" the claimed abstract idea into a patent-eligible application.'" Id. (quoting Alice, 573 U.S. at 221). Specifically, the court determines "whether the claim elements, individually and as an ordered combination, contain an inventive concept, which is more than merely implementing an abstract idea using 'well-understood, routine, [and] conventional activities previously known to the industry.'" Id. (quoting Content Extraction

& Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014)).

"Patent eligibility is a question of law that may involve underlying questions of fact. PersonalWeb, 8 F.4th at 1314; see Berkheimer v. HP Inc., 881 F.3d 1360, 1365 (Fed. Cir. 2018). "Thus, patent eligibility may be resolved at the Rule 12 stage only if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant." Coop. Ent., 50 F.4th at 130 (collecting cases). "But 'not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry.' Indeed, that inquiry 'may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law.'" PersonalWeb, 8 F.4th at 1314 (citations omitted).

The party challenging the validity of the patents-in-suit bears the burden of proof under the § 101 two-step framework. See Illumina, Inc. v. Ariosa Diagnostics, Inc., 967 F.3d 1319, 1328 (Fed. Cir. 2020); Vaporstream, Inc. v. Snap Inc., No. 217CV00220MLHKSX, 2020 WL 136591, at *7 (C.D. Cal. Jan. 13, 2020) ("'The accused infringer bears the burden of proof on both steps' of the Alice inquiry."); see also Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 95 (2011) ("'[T]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.'" (quoting 35 U.S.C. § 282)). Further, any fact pertinent to the § 101 eligibility analysis must be proven by clear and convincing evidence. See Berkheimer, 881 F.3d at 1368; see also Microsoft, 564 U.S. at 95 (holding that § 282 requires that an invalidity defense "be proved by clear and convincing evidence").

ii.   Step One of the § 101 Eligibility Analysis

Under step one, the court "determine[s] whether the claim is 'directed to' a 'patent-ineligible concept,' such as an abstract idea." Coop. Ent., 50 F.4th at 130 (quoting Alice, 573 U.S. at 217). The Federal Circuit has "'approached the Step 1 directed to inquiry by asking what the patent asserts to be the focus of the claimed advance over the prior art. In

conducting that inquiry, [courts] must focus on the language of the asserted claims themselves, considered in light of the specification.'" Yu v. Apple Inc., 1 F.4th 1040, 1043 (Fed. Cir. 2021) (cleaned up) (quoting TecSec, Inc. v. Adobe Inc., 978 F.3d 1278, 1292 (Fed. Cir. 2020)); see also CardioNet, LLC v. InfoBionic, Inc, 955 F.3d 1358, 1372–73 (Fed. Cir. 2020) ("In determining what the claims are directed to and whether they are directed to an abstract idea, a court may well consult the plain claim language, written description, and prosecution history."). The step one inquiry "presents a legal question that can be answered based on the intrinsic evidence." CardioNet, 955 F.3d at 1372.

Under step one, "[i]f the focus of the claim is a specific and concrete technological advance, for example an improvement to a technological process or in the underlying operation of a machine, [the court's] inquiry ends and the claim is eligible." Adasa Inc. v. Avery Dennison Corp., 55 F.4th 900, 908 (Fed. Cir. 2022). "'In cases involving software innovations, the step-one inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool.'" Int'l Bus. Machines, 50 F.4th at 1377 (cleaned up) (quoting TecSec, 978 F.3d at 1292); see also In re Killian, 45 F.4th 1373, 1380 (Fed. Cir. 2022) ("We have distinguished between claims 'directed to an improvement in the functioning of a computer,' versus those . . . that simply recite 'generalized steps to be performed on a computer using conventional computer activity.'" (quoting In re TLI Commc'ns LLC Pat. Litig., 823 F.3d 607, 612 (Fed. Cir. 2016))). The Federal Circuit "ha[s] routinely held software claims patent eligible under Alice step one when they are directed to improvements to the functionality of a computer or network platform itself." Uniloc USA, Inc. v. LG Elecs. USA, Inc., 957 F.3d 1303, 1307 (Fed. Cir. 2020); see also Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("The Supreme Court has suggested that claims 'purport[ing] to improve the functioning of the computer itself,' or 'improv[ing] an existing technological process' might not succumb to the abstract idea exception."). In contrast, the Federal Circuit has "held claims ineligible as directed to an abstract idea when they merely collect electronic

information, display information, or embody mental processes that could be performed by humans." Thales Visionix Inc. v. United States, 850 F.3d 1343, 1346–47 (Fed. Cir. 2017) (citing Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1353–54 (Fed. Cir. 2016) (collecting cases)); see Killian, 45 F.4th at 1380 ("We have found . . . claims pertaining to data gathering, analysis, and notification on generic computers to be directed to abstract ideas at Alice/Mayo step one.").

The Federal Circuit has cautioned that the step one directed to inquiry does not "simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon—after all, they take place in the physical world." Enfish, 822 F.3d at 1335. Thus, courts must "be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." CardioNet, 955 F.3d at 1371; see TLI Commc'ns, 823 F.3d at 611 ("[I]n determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims because '[a]t some level, "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."'" (quoting Alice, 573 U.S. at 217)).

NXP contends that the asserted claims of the '760 Patent are directed to the abstract idea of "rearranging objects in a design to minimize overlap between layers." (Doc. No. 15-1 at 4.) As part of this argument, NXP contends that the asserted claims of the '760 Patent do not recite a computer or any computer components. (Id. at 10.) In response, Bell Semic argues that the asserted claims are not directed to an abstract idea because they are directed to improving computer functionality. (Case No. 22-cv-594, Doc. No. 93 at 5-7.) To support this argument, Bell Semic relies on several passages from the specifications of the '760 Patent. (See id. at 6-7.) Further, as part of this argument, Bell Semic contends that the asserted claims of the '760 Patent are performed on a computer and are implemented in software, and Bell Semic notes that until the Court conducts a claim construction in this action, the Court must adopt Bell Semic's constructions. (Id. at 5

(citing Coop. Ent., 50 F.4th at 134).)  On reply, NXP argues that Bell Semic's arguments fail because there is nothing in the claim language of the asserted claims that calls for any form of computer implementation, and Bell Semic improperly imports details from the specification of the '760 Patent.  (Case No. 22-cv-594, Doc. No. 99 at 1-4.)

In light of the above arguments and after reviewing the claim language and the specification of the '760 Patent, the Court concludes that resolution of the § 101 eligibility of the asserted claims of the '760 Patent would be inappropriate at this stage in the proceedings.  "Determining patent eligibility requires a full understanding of the basic character of the claimed subject matter."  MyMail, Ltd. v. ooVoo, LLC, 934 F.3d 1373, 1379 (Fed. Cir. 2019); see also Intell. Ventures I LLC v. Cap. One Bank (USA), 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the Alice framework, it is often useful to determine the breadth of the claims . . . .").  In light of this, "resolution of a patent's section 101 eligibility is not always appropriate at the Rule 12(b) motion to dismiss stage without the benefit of claim construction."  Mirror Imaging, LLC v. PNC Bank, N.A., No. W-21-CV-00518-ADA, 2022 WL 229363, at *2 (W.D. Tex. Jan. 26, 2022); see Glob. Locating Sys., LLC v. ShadowTrack 247, LLC, No. 1:19-CV-00225-MR, 2020 WL 3513535, at *3 (W.D.N.C. June 29, 2020) ("[A] court may require claim construction before ruling a motion to dismiss based on patent eligibility under § 101." (collecting cases)); see also MyMail, 934 F.3d at 1379 (explaining "if the parties raise a claim construction dispute at the Rule 12[] stage, the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis" (citing Aatrix, 882 F.3d at 1125)).  Indeed, "[c]ourts routinely deny § 101 motions as premature where claim construction disputes exist[]."  Celgene Corp. v. Lotus Pharm. Co., No. CV 17-6842-SDW-LDW, 2018 WL 6584888, at *2 (D.N.J. Dec. 14, 2018); see, e.g., R2 Sols. LLC v. Am. Airlines, Inc., No. 4:22-CV-00353, 2022 WL 17477543, at *2 (E.D. Tex. Dec. 6, 2022) (denying motion to dismiss without prejudice and deferring the issue of patent eligibility under § 101 until after claim construction); AML IP, LLC v. Am. Eagle Outfitters, Inc., No. 6:21-CV-00823-ADA, 2022 WL 11456095, at *7–8 (W.D. Tex.

Oct. 19, 2022) (same); Enserion, LLC v. Orthofix, Inc., No. 4:20-CV-108, 2020 WL 5544614, at *2 (E.D. Tex. Sept. 16, 2020) (same); Teradyne, Inc. v. Astronics Test Sys., Inc., No. CV 20-2713-GW-SHKX, 2020 WL 13593156, at *6–7, 12 (C.D. Cal. Aug. 7, 2020) (same); Glob. Locating, 2020 WL 3513535, at *4 (same).

Here, the parties present a clear claim construction dispute in their briefing on the § 101 eligibility issues as to the '760 Patent – i.e., whether the asserted claims of the '760 Patent require the use of a computer. (Compare Case No. 22-cv-594, Doc. No. 93 at 5 with Case No. 22-cv-594, Doc. No. 99 at 2-4; Doc. No. 15-1 at 10.) In light of this claim construction dispute between the parties, the Court concludes that the appropriate course is to defer the issue of the § 101 eligibility of the asserted claims of the '760 Patent until after claim construction in this action.[2] As such, the Court declines to dismiss Bell Semic's

---

[2]   The Court acknowledges that the Federal Circuit has explained that "[i]n many cases," evaluation of a patent claim's subject matter eligibility under § 101 can proceed before a formal claim construction. Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369, 1374 (Fed. Cir. 2016); see also Content Extraction & Transmission, 776 F.3d at 1349 ("Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101."). But this is generally when there is no claim construction dispute between the parties relevant to the § 101 eligibility issues. See, e.g., Genetic Techs., 818 F.3d at 1374; Simio, LLC v. FlexSim Software Prod., Inc., 983 F.3d 1353, 1365 (Fed. Cir. 2020); Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC, 958 F.3d 1178, 1184 (Fed. Cir. 2020). In contrast, here, there is a clear claim construction dispute between the parties that is relevant to the § 101 eligibility issues as to the asserted claims of the '760 Patent. Cf. Int'l Bus. Machines, 50 F.4th at 1377 ("'In cases involving software innovations, the step-one inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool.'" (cleaned up)); Killian, 45 F.4th at 1380 ("We have distinguished between claims 'directed to an improvement in the functioning of a computer,' versus those . . . that simply recite 'generalized steps to be performed on a computer using conventional computer activity.'").

In its reply brief, NXP argues that the Court need not wait until claim construction to determine the subject matter eligibility of the asserted claims because even if the Court credits Bell Semic's proposed claim construction, the asserted claims are directed to patent-ineligible subject matter. (Case No. 22-cv-594, Doc. No. 99 at 1, 4-6.) The Court

claim for infringement of the '760 Patent on the grounds that the asserted claims of the '760 Patent are invalid under 35 U.S.C. § 101.[3]

B. The Sufficiency of Plaintiff's Infringement Allegations

In the complaint, Bell Semic alleges against NXP a claim for infringement of the '760 Patent. (Doc. No. 1, Compl. ¶¶ 34-46.) NXP argues that Bell Semic's claim for infringement of the '760 Patent should be dismissed because the FAC fails to set forth sufficient factual allegations showing that it is plausible that NXP infringes the '760 Patent. (Doc. No. 15-1 at 16-20.)

To establish infringement of a method claim, "a patentee must prove that each and every step of the method or process was performed." Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech., 709 F.3d 1348, 1362 (Fed. Cir. 2013); see Akamai Techs., Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) ("Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity."); Star Sci., Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1378 (Fed. Cir. 2011) ("To prove infringement, a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device."). The Federal Circuit has explained that in order to assert a plausible claim for patent infringement under the Iqbal/Twombly standard, the complaint must "place the alleged infringer on notice of what activity is being accused of infringement." Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1352 (Fed. Cir. 2021) (cleaned up) (quoting Lifetime

---

acknowledges that when parties present a district court with a claim construction dispute at the Rule 12 stage, a district court may either: (1) adopt the non-moving party's constructions; or (2) resolve the parties' dispute. See MyMail, 934 F.3d at 1379; Aatrix, 882 F.3d at 1125. The Court concludes that based on the specific claim construction dispute presented by the parties and its relevancy to the § 101 issues in this case, the appropriate course is to resolve the parties' dispute through a formal claim construction hearing and order prior to resolution of the § 101 issues in this case.

[3] The Court's denial of this portion of NXP's motion to dismiss is without prejudice to NXP re-raising its § 101 challenge to the asserted claims of the '760 Patent through an appropriate motion after the Court issues its claim construction order in this action.

Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017)). A plausible claim for patent infringement "must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content." Id. Thus, a plaintiff cannot simply recite the claim elements and merely conclude that the accused product has those elements. Id. at 1353. Rather, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Id. "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." Id.

Nevertheless, the Federal Circuit has explained that the standard for pleading patent infringement is "not onerous" and "a plaintiff need not prove its case at the pleading stage." Id. at 1352, 1354 (internal quotation marks omitted); see also WiTricity Corp. v. Momentum Dynamics Corp., 563 F. Supp. 3d 309, 327 (D. Del. 2021) ("'[V]ery little is required in order to plead a claim of patent infringement.'"). In addition, the Federal Circuit has specifically held that "[a] plaintiff is not required to plead infringement on an element-by-element basis." Bot M8, 4 F.4th at 1352; see Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018).

Bell Semic argues that it has adequately stated a claim for infringement of the '760 Patent because the element-by-element analysis provided in its complaint "'clearly exceeds'" what is required under Rule 8(a). (Case No. 22-cv-594, Doc. No. 93 at 9-10 (quoting Nalco, 883 F.3d at 1350).) The Court agrees with Bell Semic. The Federal Circuit has explained that in order to state a claim for patent infringement, a plaintiff "is not required to plead infringement on an element-by-element basis." Bot M8, 4 F.4th at 1352; see Nalco, 883 F.3d at 1350. Nevertheless, Bell Semic has provided such element-by-element allegations in the complaint.

In the complaint, Bell Semic alleges that NXP has directly infringed at least independent claim 1 of the '760 Patent. (Doc. No. 1, Compl. ¶ 39.) To support this

allegation, the complaint sets forth the claim language for claim 1 and then provides factual allegations explaining how NXP performs each element of the claimed method through its use of design tools by Cadence Design Systems, Inc. ("Cadence"), Synopsys, Inc. ("Synopsys"), and/or Siemens Digital Industries Software ("Siemens") to design its LS1043A Quad-Core Networking Processor devices. (Id. ¶¶ 31, 39-40.) In addition to these factual allegations in the complaint, Bell Semic has attached a claim chart to the complaint containing further element-by-element analysis with citations to supporting evidence of how NXP allegedly performs the claimed method through its use of the design tools at issue. (See id. ¶ 41; Doc. No. 1-3, Compl. Ex. B at 3-11.) These factual allegations in the complaint along with the supporting claim chart are more than sufficient to "place [NXP] on notice of what activity is being accused of infringement." Bot M8, 4 F.4th at 1352; see, e.g., Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (finding allegations sufficient to state claims for direct infringement of the patents-in-suit where the patentee specifically identified the infringing products and alleged those products included each and every element of at least one claim of the patents-in-suit); Bell Semiconductor, LLC v. Western Digital Techs., Inc., No. 22-cv-01127-JAK-MRW, ECF No. 74 at 4 (C.D. Cal. Jan. 3, 2023) (finding similar allegations in a complaint by Bell Semic sufficient to state claims for direct infringement of the patents-in-suit in that case).

NXP argues that Bell Semic's allegations are insufficient because the complaint "contains no description of NXP's Product or the process used to design it. . . . Indeed, the complaint contains almost no allegations about NXP at all." (Doc. No. 15-1 at 16-17; see Case No. 22-cv-594, Doc. No. 99 at 7.) The Court rejects this argument as it is plainly incorrect and is a gross mischaracterization of Bell Semic's allegations. To support its allegation that NXP directly infringes independent claim 1 of the '760 Patent, Bell Semic alleges that "NXP employs a variety of design tools . . . to make a layout for an interconnect layer of a semiconductor device (the 'Accused Processes') as recited in the '[760] patent claims." (Doc. No. 1, Compl. ¶ 39.) Bell Semic further alleges:

> NXP's Accused Processes allow arrangement and rearrangement of

>dummy fill in a timing aware fashion, including with the ability to stagger the dummy fill in successive layers so as to minimize the interlayer bulk capacitance after determining their overlap as required by claim 1 of the '760 patent. NXP does so by employing a design tool . . . [to] rearrange the dummy fill features in successive layers of its [NXP LS1043A Quad-Core Networking Processor devices].
>
>[] NXP's Accused Processes also form the dummy fill features in a grid within one or more of the successive layers, provide square-shaped dummy fill features in one or more of the successive layers, determine the dummy fill space based on a local pattern density in one or more of the successive layers, and minimize the total bulk capacitance and/or certain of its components. NXP does so by employing a design tool . . . to implement dummy fill functionality in a timing-aware fashion and with consideration of interlayer capacitive effects in creation and design of its [NXP LS1043A Quad-Core Networking Processor devices].

(Id. ¶¶ 39-40.)  These allegations are further supported by the attached claim chart explaining how the software design tools at issue can be used to perform the claimed method and asserting that NXP has used the design tools in this manner to create the circuit design for its LS1043A Quad-Core Networking Processor chips.  (Doc. No. 1-3, Compl. Ex. B at 3-11.)  Here, Bell Semic provides specific factual allegations regarding NXP's actions during the circuit design process for at least its LS1043A Quad-Core Networking Processor chip to support its claim for infringement of the '760 Patent.  These factual allegations are sufficient to state a claim for patent infringement.  See Bot M8, 4 F.4th at 1353; Disc Disease, 888 F.3d at 1260; Bell Semiconductor, No. 22-cv-01127-JAK-MRW, ECF No. 74 at 4.

NXP contends that Bell Semic's allegations regarding the design tools at issue are insufficient because they are nothing more than speculation based "on information and belief."  (Doc. No. 15-1 at 1, 17; see Case No. 22-cv-594, No. 99 at 8-9.)  The Court also rejects this argument.  In the complaint, Bell Semic alleges: "On information and belief, MaxLinear employs a variety of design tools, for example, Cadence, Synopsys, and/or Siemens tools, to make a layout for an interconnect layer of a semiconductor device . . . as recited in the '[760] patent claims." (Doc. No. 1, Compl. ¶ 39.)  In its attached claim charts,

Bell Semic further asserts that NXP is a customer of at least Synopsys and cites to evidence to support this assertion.[4] (Doc. No. 1-3, Compl. Ex. B at 1 n.1.)  The Ninth Circuit has explained that "'[t]he Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'"  Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)); see also Concha v. London, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[W]e relax pleading requirements where the relevant facts are known only to the defendant."); Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1330 (Fed. Cir. 2009) ("Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control.").  As such, Bell Semic's allegations made on information and belief regarding the design tools are sufficient to support its claim for infringement of the '760 Patent.  See Soo Park, 851 F.3d at 928; see, e.g., WiTricity, 563 F. Supp. 3d at 328 ("Although some of the allegations regarding the accused product are plead on information and belief, more detailed allegations are not required at this stage. Indeed, 'it may not be possible for a plaintiff to describe its case-in-chief with particularity at the outset of litigation, without access to the accused method, the accused apparatus for reverse engineering, or confidential data such as source code.'").

Finally, NXP asserts that the FAC fails to include any facts describing what, if anything, Bell Semic did to investigate or understand whether the LS1043A Quad-Core Networking Processor chip was designed using a particular method. (Doc. No. 15-1 at 17.) But "reverse engineering or review of non-public information is not necessary to put Defendant on notice of the infringement allegations." Bell Semiconductor, No. 22-cv-

---

[4]    The Court notes that in a related action, Bell Semic has asserted that NXP is a customer of at least Cadence and Synopsys and cites to evidence to support that assertion. (Case No. 22-cv-1267, Doc. No. 22-4, FAC Ex. D at 2; see also Case No. 22-cv-594, Doc. No. 89 at 15.)

01127-JAK-MRW, ECF No. 74 at 4.

In sum, Bell Semic has adequately stated a claim against NXP for direct infringement of the '760 Patent. As such, the Court denies NXP's motion to dismiss Bell Semic's claim for infringement of the '760 Patent for failure to state a claim.[5]

### Conclusion

For the reasons above, the Court denies Defendant NXP's Rule 12(b)(6) motion to dismiss. NXP must file an answer to Plaintiff Bell Semic's complaint **within fourteen (14) days from the date this order is filed**. See Fed. R. Civ. P. 12(a)(4)(A). The answer must be filed in both the original case (Case No. 22-cv-1794) and the lead case (Case No. 22-cv-594). All other future filings must be made only in the lead case (Case No. 22-cv-594) absent further order of the Court.

**IT IS SO ORDERED.**

DATED: January 27, 2023

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[5] In its briefing, NXP raises various challenges to the declaration from Bell Semic's technical expert, Dr. Brahmbhatt, attached as Exhibit C to the complaint. (Doc. No. 15-1 at 19-20; Case No. 22-cv-594, Doc. No. 99 at 10.) Because the Court does not cite to or rely in any way on the Brahmbhatt declaration in deciding NXP's Rule 12(b)(6) motion to dismiss, NXP's challenges to the Brahmbhatt declaration for purposes of its Rule 12(b)(6) motion to dismiss are moot, and the Court declines to address them.